**Arcadio AYALA, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

Civ. No. 264–70.

United States District Court,
D. Puerto Rico.

May 21, 1971.

See also 51 F.R.D. 505.

Rafael D. Molinary, Rio Piedras, P. R., for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Julio Morales Sánchez, U. S. Atty., Dept. of Justice, San Juan, P. R., for defendant.

## MEMORANDUM and ORDER

FERNANDEZ-BADILLO, District Judge.

This Social Security case involves judicial review of the final decision rendered by the Secretary of Health, Education and Welfare denying disability insurance benefits, 42 U.S.C. § 405(g). Arcadio Ayala, a 53-year-old non-skilled, uneducated laborer, has challenged the Secretary's adverse decision alleging that it is "contrary * * * to the facts and against the evidence."

The claimant is an individual with a long work history whose first job was delivering milk by foot at the early age of twelve. He has worked for extensive periods in warehouses [1] and has done janitorial work. In 1967 he suffered an accident while working with a company breaking up tables with a hammer. He testified at the hearing that "a piece of

---

[1]. He worked from 1956 to 1961 carrying merchandise from the docks to a warehouse and from 1961 to 1967 was employed at a grocery store stacking merchandise in shelves at a warehouse.

steel injured my right eye[2]." On June 20, 1968 he filed an application for disability insurance benefits claiming blindness as his disabling condition. Two months later claimant reported at a disability interview that he had lost total vision in his right eye and could only see objects' outlines with the left eye. The interviewer remarked that plaintiff walked "as the blind usually do with hands outstretched in front." However, he walked away without aid (Tr. pp. 58, 61).

After receiving an unfavorable decision by the hearing examiner, plaintiff requested its review by the Appeals Council stating that he was "unable to see enough to do any work." Said request was granted and plaintiff was given the opportunity to submit any evidence not previously supplied (Tr. p. 8). He presented no medical evidence and after undergoing a second ophthalmological examination the Appeals Council affirmed the examiner.

It is not disputed by the fact finders that this man has a 60% loss of vision in his right eye. However, he has repeatedly claimed loss of vision in his left eye. During the hearing he testified that "I lose the sight in this eye so frequently I almost never go out," and yet, he indicated that "sometimes I can see well with it[3]." (Tr. p. 30)

The State Insurance Fund reports indicate that a 13% total incapacity was fixed as a result of his eye injury. He was authorized to work on June 28, 1967, approximately two months after the accident, claimant received no medical treatment thereafter. On April 9, 1969 he submitted to a consultative ophthalmological examination and the examining physician stated:

"The patient has brisk pupillary reflexes both eyes, but claims no light perception in the right eye. He is not willing to turn his right eye and command movements are impossible. Fol-

low movements are excellent." (Tr. p. 71)

He recommended that plaintiff should have 'a psychiatric consultation and active treatment. Recommendations on types of activity to be avoided were to be given after psychiatric treatment. On May 6, 1969 Dr. Gerardo Sanz Ortega, psychiatrist, described plaintiff as a man who was not suffering from any mental condition which could justify his referral to evaluation. The mental examination proved normal and it was reported that "his capacity for work should be determined on the basis of his physical condition if any present."

The hearing examiner deeming this sufficient to justify the denial of benefits stated in his opinion:

"* * * the clinical and diagnostic evidence of record persuasively demonstrates that the claimant has sufficient vision in his left eye to allow work activity. He has no other disabling physical or mental impairments. The claimant is fully qualified from a functional viewpoint of returning to his work as a laborer or other similar work commensurate ·with his vocational and educational aptitude such as janitoral or agricultural labor." (Tr. p. 15)

His express finding on this basic issue was that "claimant retains the physical and mental capacity of doing his usual types of work." The Appeals Council, however, desired "conclusive medical documentation[4]" and referred plaintiff to a second ophthalmological examination on December 10, 1969. The examining physician made the following significant comments:

"I can't find any oph. [ophthalmological] reason why this pt. ·[patient] can't see well out of his left eye and much, much better out of his right eye." (Tr. p. 77)

In his extensive brief claimant emphasizes the remedial purpose of the

---

2. The State Insurance Fund reports repeatedly state that a piece of stone incrustated in his right eye.

3. In both instances he was referring to the *left* eye.

4. Tr. p. 5; decision of Appeals Council.

statute [5] and points to the well-established principle that when an individual makes a prima facie showing that he is unable to return to his former occupations the burden shifts to the Secretary who must then prove that claimant is able to undertake some other type of substantial gainful employment. Stacy v. Richardson (W.D.Va., 1971) 320 F. Supp. 936. However, there is a corollary rule that once the Secretary finds that a claimant is able to perform his usual trade or occupation, "such a determination precludes the necessity of an administrative showing of gainful work which the appellant was capable of doing and the availability of any such work." Sell v. Cohen (E.D.Ky., 1968) 293 F. Supp. 684. True, this rule does not relieve the Secretary from supporting his factual finding of non-disability with substantial evidence. Garrett v. Finch (6th Cir., 1970) 436 F.2d 15.

Such is the situation here. The Secretary did not have to inquire into the availability of other work sources because he initially declared that claimant was not suffering from a disability as defined in the Act. Thus, the sole issue to be resolved turns upon the substantiality of the evidence surrounding the Secretary's findings. After reading the entire record, the Court is of the view that the Secretary's final decision must be affirmed on account of the existence of substantial evidence. The Secretary's adverse decision on an analogous claim was affirmed in Brown v. Finch, supra. There the Court held that a 53-year old claimant who was practically blind in her right eye but had normal vision in the left one "retained the physical capacity to engage in the employment she had performed in the manufacture of handkerchiefs and in other allied work existing in the national economy." The medical evidence in the present case does not support claimant's assertion that he cannot work at all. The fact that his visual defect could make it difficult to work with instruments such as a "machete" (Tr. pp. 59–60) certainly does not justify the conclusion that it bars his customary tasks at warehouses and as janitor.

In brief, plaintiff has failed to establish an impairment of such severity as to entitle him to disability benefits. There is substantial evidence on record that his condition does not meet the severity requirements of the Act. Therefore, the Secretary's findings are conclusive and the Court is bound to affirm his decision. The complaint filed on April 13, 1970 must be and is hereby dismissed. Judgment will be entered accordingly.

5. Although it is uncontested that the Social Security provisions are remedial in nature and must be liberally construed, nevertheless, the legislative history of 1967 amendments to the Social Security Act "discloses that Congress intended for the Secretary and the courts to be more restrictive in considering claims for disability insurance benefits." Brown v. Finch (M.D.N.C.1969) 320 F.Supp. 660, aff'd 432 F.2d 1008 (4th Cir., 1970).