**Francisco Suarez CONCEPCION, Plaintiff,**

**v.**

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**Civ. No. 990–70.**

United States District Court, D. Puerto Rico.

Dec. 28, 1971.

George L. Weasler, Santurce, P. R., for plaintiff.

Julio Morales Sanchez, U. S. Atty., San Juan, P. R., for defendant.

## OPINION ORDER

CANCIO, Chief Judge.

This is an action filed pursuant to 42 U.S.C. § 405(g) seeking review of the Secretary of Health, Education and Welfare's decision denying claimant's disability insurance benefits. The Secretary of Health, Education and Welfare filed a motion for summary judgment with a memorandum of law in support thereof, on June 23, 1971, to which the plaintiff replied on July 21, 1971, with a brief in which a remand pursuant to 42 U.S.C. § 405(g) was suggested as an additional alternative remedy. Finally, on September 3, 1971, the Secretary replied with a supplemental memorandum. The matter, then, stands submitted. Since the motion for summary judgment was filed shortly after Judge Fernádez-Badillo's opinion in Ayala v. Secretary of Health, Education and Welfare, D.C., 326 F.Supp. 675 (1971), agreed to by the two other judges of this court, and since the matter has stood submitted for some time, the Court will decide the case on this motion for summary judgment.

In requesting a remand for "good cause" pursuant to 42 U.S.C. § 405(g), the claimant points out that he did not have an attorney at the administrative hearing before the hearing examiner (Tr. 14–42) and that the hearing was inadequate. He offers through his attorney to present additional and more adequate medical evidence at the hearing and to present additional evidence through the interrogation, by an attorney, of the vocational expert Paul N. Senior, who testified at the hearing.

From the beginning of the testimony of the claimant at the hearing (Tr. 18), the possibility that a communication gap existed between the examiner and the claimant is apparent. After a lengthy explanation of the procedure to be followed during the hearing (Tr. 18), the examiner told the claimant that he was going to introduce in evidence the documents in the file and asked the claimant if he wanted to examine them. The claimant replied: "No, for what if you're telling me. I believe in him, the same thing, that all I'm going is what he is repeating. I believe in him." The examiner interpreted this by stating: "Okay, in other words, he trusts me . . . ." (Tr. 18); and went on to say that Mr. Senior was present and that he had copies of the documents. He asked the claimant if he objected to Mr. Senior's presence, to which claimant replied: "I have no objection. One moment, Mr. Senior, what is his function here" (Tr. 18). After a one page explanation as to Mr. Senior's functions as a vocational expert (Tr. 19), the claimant was asked if he understood. Then, the following exchange took place:

A Can I explain it again? He's asking if—He has a question.

Q He's asking if he can question. I thought he was . . .

A I understand.

Q You will have an opportunity to ask questions after Mr. Senior has testified.

The Court's concern for the rights of the claimant, which is awakened by the evidence of the difficulties that he was experiencing in communicating by means of a translator with the examiner, is augmented by the lack of aid to, and solicitousness for plaintiff, which the examiner showed through the hearing.

There were inconsistencies and confusion in the testimony and evidence, probably motivated by the above-mentioned communication gap, related to the formal education of the claimant. Originally, claimant stated that he had a high school academic course (Tr. 20). Then (Tr. 21), he states that his academic experience is eighth grade. And further on he states that he studied through high school (Tr. 21). Finally, the examiner asked: (Tr. 22) "If I understand your testimony, your education, while consisting of a high school education, you went that far, you received no special training, either business or otherwise, while in school. All of your working career has been in work involving standing, walking, possibly heavy exertion; that is, lifting or climbing, or swinging of an ax or sledge, is that right?", to which the claimant replied: "Yes, because I come from a poor family and I did not have the opportunity to continue studying."

This was the time to be solicitous and helpful in seeking to clear the matter. Was the family too poor to pay for a college or a high school education? From the record it is not clear.

That the examiner could have done more to find the truth of the matter is illustrated at Tr. 24, where the examiner notes that plaintiff's discharge papers reflect that his "education was only eighth grade grammar school diploma" and chooses not to inquire further into the matter.

The prejudice suffered by the claimant at this hearing is further demonstrated in the examination of the expert, Mr. Senior. In his hypothetical question, the examiner told Mr. Senior, among other things, that claimant "has at least an eighth grade education" (Tr.

27). In reply (Tr. 28), Mr. Senior states that "the education of 12 grades, I presume, he ever took the high school equivalency up when he started out after his military service, which is very common in Puerto Rico, is double that of the average Puerto Rican, and that's a plus factor." The expert went on to state that there were jobs available for the plaintiff. The examiner did not attempt to find the effect of the assumption on the expert's conclusions. Surely, it will not be disputed that further inquiry on a matter as important as the subject's education has warranted in this case.

That the petitioner herein could have been more fairly treated at the hearing is finally shown by the following exchange between the examiner and the expert witness (Tr. 38–39).

Q I think he's asking you to state whether or not it's true that in the competitive labor market, that employers will assume that someone with an illness will not be a good producer, more or less pertinent to the case, or not, that is the question. So I think the answer is obvious, that he's right, probably would . . .

A Sure, sure, he probably wouldn't be selected, sure.

Q I'll ask you now though, in light of that question, your testimony was, as I understood, that these jobs you mentioned are available and, by stating they are available, the state of the market is such that handicapped people would be considered, is that right?

A Handicapped people have been placed in those jobs, yes, sir. As I say, we're talking about sedentary jobs, so his leg condition is not in issue.

Q I assume, if I understood you correctly, that you're talking about jobs in industries where they're interested in hiring people who can do the work, whether they have impairments or not.

A That's correct, yes, sir.

The leading of this witness, by the examiner, at the time he was being cross-examined by a non-lawyer, non-English-speaking person is not the best administrative practice.

It has been clearly stated by this Court that the lack of the aid of an attorney at the administrative hearing does not deny procedural due process, Vega v. Secretary of Health, Education and Welfare, 321 F.Supp. 553 (1970). In the same case this Court stated:

Having been afforded the opportunity for counsel representation, the plaintiff was not denied due process during the administrative hearing at which he appeared without such representation. Moreover, it has been held that absence of counsel during the prior administrative proceedings does not constitute "good cause" pursuant to section [205(g)] for remand of the case for further administrative proceedings.

The Court of Appeals for this Circuit held in Toledo v. Secretary of Health, Education and Welfare, 435 F.2d 1297 (1971), that reversal for lack of attorney is not required where "there is no suggestion that having counsel would have resulted in the presentation of any better case" where "it is quite apparent from the record that plaintiff was fairly treated" and where "the examiner was exceptionally solicitous and helpful" (P. 1297), so that there is no prejudice shown.

Cross v. Finch, 5 Cir., 427 F.2d 406, 408–409, which is cited extensively in Vega, supra, and by the Court of Appeals in Toledo, supra, expresses that it is possible, upon a showing of clear prejudice or unfairness caused by a claimant's lack of counsel, to acquire a reconsideration by the Secretary upon a remand. In Webb v. Finch, 6 Cir., 431 F. 2d 1179 (1970), the Court remanded a case upon the representation by counsel, on appeal that additional evidence was available which would produce a different result, and upon the fact that the

claimant sought to represent himself at the hearing and was uneffectual and hampered by his lack of education.

 In this case, such representations have been made by counsel. Additionally, this is not a case where a remand is sought only because of the lack of the aid of an attorney at the administrative level. In the case at bar, difficulties in communication and an over-zealous examiner have caused a claimant, unaided by an attorney, sufficient prejudice to justify a remand and constitute "good cause", pursuant to 42 U. S.C. § 405(g).

The case is remanded to the Secretary of Health, Education and Welfare, pursuant to 42 U.S.C. § 405(g), for the taking of testimony and further proceeding consistent with this opinion.

It is so ordered.