Ramon Hernandez **TORRES**, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE**, Defendant.

Civ. No. 593–70.

United States District Court,
D. Puerto Rico.

Dec. 29, 1971.

Henry Schmer, San Juan, P. R., for plaintiff.

Wally De La Rosa, Asst. U. S. Atty., San Juan, P. R., for defendant.

MEMORANDUM AND ORDER

HIRAM R. CANCIO, Chief Judge.

This is an action filed under 42 U.S.C. § 405(g) seeking review of the Secretary of Health, Education and Welfare's decision, ending plaintiff's period of disability and disability insurance benefits as of November 1968.

Plaintiff filed his request for benefits on January 22, 1969. After denying it initially, the Secretary found petitioner disabled from June 20, 1967 up until September 6, 1968. Plaintiff's condition arose when he suffered a crushing injury to his arm and hand while working in a factory on June 20, 1967.

After exhausting the administrative procedures, plaintiff filed this action, which stands submitted on defendant's motion for summary judgment filed on February 8, 1971. Since the motion was filed before Judge Fernández-Badillo's

decision in Arcadio Ayala v. Secretary of Health, Education and Welfare, 326 F.Supp. 675 (1971), agreed to by the two other judges of this court, the Court will dispose of the case on the motion.

The medical evidence related to plaintiff's condition is neither clear nor complete. The record on file from the Kearney, New Jersey Memorial Hospital (Tr. 63) shows that when admitted on June 20, 1967, the claimant presented symptoms of pain and swelling and difficulty of movement on the left wrist and hand, and numbness of the fingers. A diagnosis of contusion and edema of left wrist and hand, and abrasion in the left wrist, was advanced. X-rays were negative.

A report dated March 19, 1968 by Dr. Spencer T. Snedecor, an orthopedic surgeon (Tr. 64), states that the plaintiff was his patient since December 29, 1967. He states that the claimant has not worked since then and has been totally disabled. His diagnosis is "severe contusion with neurovascular and joint complications involving the left wrist" (Tr. 64). The rehabilitation and improvement is deemed slow and he characterizes this as "a real problem case" (Tr. 64). Emphasis added. His prognosis is "Total disability period *still indefinite*. As of now looks like two or three months more *at least* (Tr. 64). Emphasis added. It is apparent that this report cannot serve as a basis for a determination that plaintiff's incapacity ended on September 1968. The disability period is stated to be indefinite and the prognosis is for incapacity for *at least* two or three months. It is not true as the hearing examiner reports at Tr. 8 that in Dr. Snedecor's opinion the total disability period "would take three more months" (Tr. 8). Two or three months are minimum figures.[1] The next report

(Tr. 65–66), dated September 6, 1966 is submitted by Dr. Lester Siegel and reports the results of a neuropsychiatric examination. After stating the history of the case, the doctor emitted the following physical and neurological findings:

1. The left forearm, wrist and hand are cooler to touch than the right.
2. Some swellings noted in the distal forearm, wrist and proximal hand.
3. Movements of the wrist are practically nil.
4. He makes a very poor and incomplete fist and there is no gripping power in the hand.
5. Finger abduction and abduction, coning of the fingers and snapping of the fingers from the thumb are all done, but done slowly and sluggishly; no weakness of thumb movement.
7. There is a marked glovehypalgesia of the left upper extremity from the proximal third of the forearm down.

He goes on to state that he has read Dr. Snedecor's report and agrees with his orthopedic and neurocirculatory diagnosis. He then states:

Of further interest in this picture is the doctor's use of the phraseology "a real problem case". This phrase is very enlightening because my examination reveals that *this is a problem case because of a massive hysterical neurosis projected to the area* of injury. Treating a neurovascular (or vaso-motor disturbance) in the hand *is bad enough but with a neurosis of this sort the problem becomes very formidable*.

He then goes on to calculate plaintiff's neuropsychiatric disability at "about

---

1. The Court is surprised to note that, in his brief defendant has stated at page 3, under the heading of "Facts", that Dr. Snedecor "estimated that plaintiff's disability would continue for at least two or three more months" (Tr. 64) and then, under "argument" at page 6 states " . . . estimated plaintiff's disability

would *only continue for an additional* 2 or 3 months." There is absolutely no reason why the facts should be different when being stated as "facts" and when under the hearing of "argument". To argue, the facts need not be twisted. The Court is most sure that this was an inadvertence.

20% of total" (Tr. 66). It is this report on which the Secretary based its original determination to end plaintiff's period of incapacity (Tr. 7). The conclusion that "the examination on September 6, 1968 revealed that claimant had the residual capacity to resume several of his former jobs, including the job of yardman which is a light job, and his bakery job, his sanding job, his street cleaning job, and his sugar cane planting job. Each of these jobs were classified as light to medium work by the vocational expert and the Hearing Examiner concurs" is vitiated by the fact that the examiner failed to include in his hypothetical question to the vocational expert (Tr. 35) the neuropsychiatric findings in Dr. Siegel's report of September 1968. A massive hysterical neurosis projected to the area of the injury is no less disabling by originating in the mind. The fact that the physical symptoms experienced by a person are partly caused by a hysterical neurosis does not by any means justify a finding of malingering and cannot be disregarded when attempting to determine a person's condition. An injury is no less disabling because some or all of the symptoms suffered are caused by hysteria.

The last report in the record was prepared by Dr. Arturo Cadilla, Jr., an orthopedic surgeon (Tr. 67–68). After recording his objective observations, he reports as follows: "neurologically there is an alleged hyposthesia to anesthesia of the extremity, from the elbow down??"[2] (Tr. 68). He then concludes: "This 55 years old man suffered wringer crushing injury involving the left forearm, wrist and hand, with damage to soft tissue structures including nerves. We feel local steroids injections and more physiotherapy should help. At present he is not fitted to work with the left wrist and hand." Finally, in a report of contact (Tr. 69) someone from the Social Security Office states that Dr. Cadilla told him that "at the time of his examination on April 1, 1969 he found no swelling, minimal atrophy and no gross circulation defect in claimant's left arm, and added that claimant had muscle weakness and decreased motion in the arm which could perhaps be improved with physiotherapy. He further stated that he found localized tenderness which he interpreted as post-traumatic bursitis which could be relieved with local injection of steroids." (Tr. 8).

As can be seen from the analysis of the evidence, it is doubtful at best that the medical evidence presented is substantial evidence to support the Secretary's finding that plaintiff's incapacity ended on September 1968. See Zeno v. Secretary of Health, Education and Welfare, 331 F.Supp. 1095.

Here we have a claimant with a third grade education, who needs the assistance of a translator to communicate with the examiner, attempting to present his case to the Social Security Administration. While it is true that the mere lack of an attorney is not good cause for remand under 42 U.S.C. § 405(g)—Vega v. Secretary of Health, Education and Welfare, D.C., 321 F. Supp. 553 (1970); Cross v. Finch, 5th Cir., 427 F.2d 406, 408–409, it is possible, upon a showing of clear prejudice or unfairness, to remand the case for reconsideration, Cross v. Finch, *supra*. In Webb v. Finch, 6th Cir., 431 F.2d 1179 (1970) the case was remanded upon a showing that additional evidence which would produce a different result was available and that claimant sought to represent himself at the hearing ineffectively and hampered by his lack of education.

The first circuit has refused to remand where "there is no suggestion that having counsel would have resulted in a better case", where "it is quite apparent from the record that plaintiff was fairly treated" and where "the examiner was exceptionally solicitous and helpful." Toledo v. Secretary of Health, Education

---

2. Perhaps the neuropsychiatric overtones discussed supra may supply an answer to Dr. Cadilla.

and Welfare, 1st Cir., 435 F.2d 1297 (1971).

Plaintiff's inability to properly present his case is demonstrated by his sophomoric attempt to evade the issue as to his driving (Tr. 30–31, Tr. 10). As counsel for plaintiff ably states in his memorandum "[p]laintiff certainly *was* evasive in this matter, he had enough intelligence to see that evidences as to driving was not going to help his case, and not enough intelligence to see that a full explanation was in his best interests."

With the aid of an attorney he would have been able to interrogate the vocational expert adequately; the examiner would not have been able to ask an inadequate, confusing and incomplete hypothetical question (or at least the defects would have been corrected) which formed the basis for the vocational expert's finding that plaintiff could go back to some of his previous jobs. An attorney would have aided plaintiff in describing more fully his prior jobs so as to give the expert a more adequate basis on which to make his findings. The attorney would inquire further into the neuropsychological aspects of the case. He would acquire from the lawyer in the damages case the additional medical evidence which was available but was not produced at the hearing (Tr. 22–23). These examples go to show the clear prejudice suffered by petitioner by not having the assistance of counsel.

That the examiner was not exceptionally solicitous and helpful is obvious. In one instance, the record strikes of cynism:

A Yes, I have a license.

Q Do you have a license?

A Yes.

Q Do you have it with you?

A Yes, from New York.

(At this time the claimant asks the interpreter to pull off his wallet from his pocket)

A My wife sometimes has to help me bathe and shave me.

Q You might as well leave it with your wife if you can't take it from your pocket . . .

Finally, from the record it is clear that additional medical evidence was available (Tr. 22–23); that the medical evidence presented was inadequate to truly ascertain plaintiff's condition, and that further inquiring into the neuropsychological aspects of the case is justified.

 For the aforesaid reasons, the Court finds that there is good cause for a remand under 42 U.S.C. § 405(g) and the case is remanded to the Secretary of Health, Education and Welfare for the taking of additional evidence, the reconsideration of this case, and further proceedings consistent with this opinion. Cf. Zeno v. Secretary of Health, Education and Welfare, 331 F.Supp. 1095.